**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL VETERANS AFFAIRS
COUNCIL,
3441 Brandon Ave. SW
Roanoke, VA 24018,

      *Plaintiff,*

      v.

FEDERAL SERVICE IMPASSES
PANEL,
1400 K St. NW, Suite 200
Washington, DC 20424,

MARK ANTHONY CARTER,
In his official capacity as Chairman of the
Federal Service Impasses Panel,
1400 K Street NW
Washington, D.C. 20424, and

FEDERAL LABOR RELATIONS
AUTHORITY,
1400 K St. NW
Washington, DC 20424,

      *Defendants.*

Case No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.     It is a fundamental principle of due process that a party who is required to submit

its disputes to a tribunal is entitled to an impartial, unbiased adjudicator.  Regrettably, the Federal

Service Impasses Panel ("FSIP," the "Panel," or the "Impasses Panel"), as currently constituted,

fails to adhere to this important principle.

2.      The Impasses Panel wields enormous power over federal unions and their employing agencies.  Faced with a negotiation impasse, the Panel can assert jurisdiction and issue an order binding on the parties for the duration of the labor-management contract, imposing contractual terms to which neither party has agreed.  For instance, in the past the Panel has:  (a) imposed management's position on a union, *see, e.g., In the Matter of Dep't of the Treasury Bureau of Alcohol, Tobacco, Firearms & Explosives and Nat'l Treasury Emps. Union*, No. 05 FSIP 137 (July 18, 2006); (b) imposed a union's position on the management, *see, e.g., In the Matter of Dep't of the Army U.S. Army Ordnance Missile & Munitions Ctr. & School & Local 1858, Am. Fed'n of Gov. Emps., AFL-CIO*, No. 90 FSIP 21 (Mar. 23, 1990); and (c) imposed compromise solutions by altering both parties' proposals and imposing a solution that neither party requested, *see, e.g., In the Matter of Dep't of the Army U.S. Army Med. Command Fox Army Health Ctr. Redstone Arsenal, Alabama & Local 1858, Am. Fed'n of Gov't Emps., AFL-CIO*, No. 16 FSIP 23 (Apr. 28, 2016).  The Panel takes these actions with no supervision whatsoever; its rulings are final, binding, and immune from judicial review.  *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984).

3.      But "with great power comes great responsibility."  *See Zagorski v. Mays*, 907 F.3d 901, 904 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 450 (2018); *U.S. v. Diaz-Carreon*, 915 F.2d 951, 955 (5th Cir. 1990).  Because they exercise "significant authority pursuant to the laws of the United States," Panel members must be appointed pursuant to the strictures of the Appointments Clause of the United States Constitution, with confirmation by the U.S. Senate. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976).  And, given their enormous power, Panel members must remain scrupulously neutral.  Indeed, Congress has circumscribed the requirements for Panel membership, requiring that members be appointed based *solely* on their "fitness" to

2

perform the duties of the office, and that they be "familiar with government operations and knowledgeable in labor-management relations." 5 U.S.C. § 7119(c)(2).

4.       The appointment of the Panel's current members does not meet these requirements.  Panel members are principal officers of the United States appointed for five-year terms by the President, but the current members' appointments have not been confirmed by the Senate as required by the U.S. Constitution.  Moreover, the current Panel members were not chosen "solely" on the basis of their fitness to perform the functions of the office as required by the statute.  None of the current members are certified neutrals.  Many of them lack even basic experience in federal labor-management relations.  And those that have experience have betrayed either bias or conflicts of interest so severe that Plaintiff is deprived of its fundamental right to a neutral arbiter.

5.       This action therefore challenges the failure to appoint members of the Impasses Panel in a manner consistent with the Appointments Clause of the U.S. Constitution.  This action also challenges the failure of the Panel to provide neutral arbiters who meet the "fitness" requirements of the governing statute and the failure to provide an unbiased tribunal as required by the Due Process Clause of the Constitution.  Plaintiff seeks a declaration that the Impasses Panel is improperly constituted, and injunctive relief to preclude the Panel from taking actions or issuing binding decisions with respect to Plaintiff until a properly constituted Panel is appointed.

**PARTIES**

6.       The National Veterans Affairs Council ("NVAC"), American Federation of Government Employees ("AFGE") Council No. 53, is the largest affiliated Council within the AFGE.  The NVAC is composed of AFGE local unions that collectively represent approximately 350,000 bargaining unit employees employed by the United States Department of Veterans

3

Affairs ("VA") in VA hospitals, offices, and cemeteries located in communities across the United States. The NVAC is a party to the master collective bargaining agreement between AFGE and the VA and is presently engaged in collective bargaining with the VA on behalf of the NVAC's constituent local unions.

7.      The Federal Service Impasses Panel is an entity within the Federal Labor Relations Authority ("FLRA"), charged by statute to provide assistance in resolving negotiation impasses between federal agencies and unions. 5 U.S.C. § 7119(c)(1). It is "composed of a Chairman and at least six other members" appointed by the President. *Id.* § 7119(c)(2).

8.      Mark Anthony Carter is the Chairman of the Federal Service Impasses Panel. He is sued solely in his official capacity.

9.      The FLRA is an independent administrative federal agency created by Title VII of the Civil Service Reform Act of 1978, also known as the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the laws and Constitution of the United States. Although orders of the Impasses Panel generally are not reviewable, this Court has jurisdiction over actions, such as this one, that do not seek review or reversal of a specific decision of the Panel. *See Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 787-88 (D.C. Cir. 2010).

11.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and (e) as the Panel performs a significant amount of its official duties in this District, and a substantial part of the events giving rise to Plaintiff's claims in this Complaint occurred here.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

### The Federal Service Impasses Panel

12.     The Labor-Management Act (the "Act") was passed as Title VII of the Civil Service Reform Act of 1978 ("CSRA").  The Act established "the first statutory scheme governing labor relations between federal agencies and their employees."  *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 91 (1983).

13.     The Act unambiguously declares that "labor organizations and collective bargaining in the civil service are in the public interest."  5 U.S.C. § 7101(a).  Its purpose is to prescribe rights and obligations of federal employees and establish procedures "to meet the special requirements and needs of the Government" "consistent with . . . an effective and efficient Government."  *Id.* § 7101(b).  It grants federal employees the express right "'to form, join, or assist any labor organization, or to refrain from any such activity,' [*id.*] § 7102, and imposes on federal agencies and labor organizations a duty to bargain collectively in good faith."  *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 92 (citing 5 U.S.C. § 7116(a)(5) and (b)(5)).

14.     The Act established the FLRA to "provide leadership in establishing policies and guidance relating to matters" under the Act.  5 U.S.C. § 7105(a)(1).  Members of the FLRA are "appointed by the President by and with the advice and consent of the Senate."  *Id.* § 7104(b). The Act gives the FLRA a variety of powers, including determining the appropriateness of bargaining units, supervising labor organization elections, issuing regulations, and resolving issues relating to the duty to bargain in good faith.  *See id.* § 7105(a)(2).

15.     The Act also established the Federal Service Impasses Panel as "an entity within the [FLRA], the function of which is to provide assistance in resolving negotiation impasses

between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1). The Panel "shall be composed of a Chairman and at least six other members." *Id.* § 7119(c)(2). It "serves as a forum of last resort in the speedy resolution of disputes . . . after negotiations have failed." *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel,* 437 F.3d 1256, 1257-58 (D.C. Cir. 2006) (internal quotation marks and citation omitted).

16.     The Impasses Panel has a substantial amount of authority to resolve federal labor disputes. It is empowered to "assist the parties in resolving the impasse through whatever methods and procedures, including factfinding and recommendations, it may consider appropriate to accomplish the purpose of this section." 5 U.S.C. § 7119(c)(5)(A).

17.     If the parties do not reach settlement after the Panel's assistance under subparagraph (A), the Panel may take additional measures, and hold hearings, administer oaths, take testimony or deposition, issue subpoenas, or "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse." *Id.* § 7119(c)(5)(B).

18.     The Panel's decisions are final and not subject to judicial review. *Council of Prison Locals*, 735 F.2d at 1499.

19.     Recognizing the broad authority given to the Panel, Congress sought to ensure that Panel members would be neutral arbiters skilled at resolving labor disputes without favoring either side. Thus, the Act provides that Panel members "shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with government operations and knowledgeable in labor-management relations." 5 U.S.C. § 7119(c)(2). Panel members may be removed by the President or (under specified circumstances) purportedly by the FLRA. *Id.* § 7119(c)(3);

Presidential Memorandum on the Delegation of Removal Authority Over the Federal Service Impasses Panel, 84 Fed. Reg. 63789 (November 12, 2019).

### The Panel's History as a Neutral Arbiter

20.     Pre-CSRA, the first iteration of the Panel was originally established by Executive Order 11491 under President Nixon, following the report and recommendations of a study chaired by then-Secretary of Labor George P. Shultz.  Exec. Order No. 11491, 34 Fed. Reg. 17605 (October 31, 1969) §§ 5, 17.  The "Shultz Report" specified that the Panel "*should be above all an impartial body*, each of whose members will be concerned with the public interest rather than with the special interests of either party to an impasse."  United States Federal Labor Relations Council, *Report and Recommendations on the Amendment of Executive Order 11491* (June 1971) at 45 (emphasis added).

21.     The Panel was designed as a neutral arbiter to resolve impasses when the Federal Mediation and Conciliation Service or any other third-party mediation entity failed.  5 U.S.C. § 7119(b)(1)-(2).  Accordingly, when President Nixon appointed the first Panel in July 1970, all seven members had "backgrounds as neutrals in labor relations" and "extensive arbitration and/or mediation experience."  Frederic Freilicher, *The Resolution of Negotiation Impasses in the Federal Service*, 23 Cath. U. L. Rev. 1, 11 (1974).  None were affiliated with either management or labor.  *Id.*

22.     The first Panel appointed by President Carter following the passage of the CSRA continued to reflect the understanding that the Panel should consist of neutral arbiters.  All seven members of the Carter Panel were certified neutrals, i.e., possessed a credential from one of the major certifying organizations for mediators and arbitrators.  Six of the seven were members of the National Academy of Arbitrators.

23.    Of the nine members who served on the Impasses Panel during the administration of President Clinton, seven had "extensive backgrounds in neutral dispute mediation."  Alyssa Rosenberg, *At an Impasse*, GOVERNMENT EXECUTIVE (July 15, 2007), available at https://www.govexec.com/magazine/magazine-news-and-analysis/2007/07/at-an-impasse/24866/.

24.    Under the Obama Administration, all eight members of the Panel were certified neutrals with membership in at least one professional arbitration organization such as the American Arbitration Association.

25.    Beverly Schaffer, one of the original members of the first Panel established following the passage of the Act, noted that "[w]hile the Statute permits the President to remove any member of the Panel at will, it also establishes professional qualifications for members and specific terms of office.  Any attempt to politicize the Panel will likely result in a serious diminution of the Panel's effectiveness in resolving negotiation impasses and redound to the detriment of the labor-management relations program."  Beverly K. Schaffer, *Negotiation Impasses: The Road to Resolution*, 47 J. Air L. & Com. 281, 285 n.21 (1982).  Unfortunately, politicizing the Panel is precisely what the present Administration has done, to the predicted detriment of labor-management relations in the federal government.

### The Current Membership of the Panel

26.    On or about May 18, 2017, President Donald J. Trump unilaterally removed all members of the Panel.  The President appointed the existing members of the Panel between July 2017 and March 2020.

27.    The current members of the Impasses Panel are Karen M. Czarnecki, Andrea Fischer Newman, David R. Osborne, Jonathan Riches, F. Vincent Vernuccio, Robert J. Gilson,

Maxford Nelsen, Michael Lucci, Patrick Wright, and Chairman Mark Anthony Carter.  *The*
*Federal Service Impasses Panel Biographies* (last visited March 25, 2020),
https://www.flra.gov/fsip_panel_bios.

28.    All of the Panel members were appointed by the President without the advice or
consent of the Senate.

29.    Upon information and belief, none of the current Panel members are members of
any of the major alternative dispute resolution organizations.

30.    Several members of the Panel, far from being neutral arbiters, are active in anti-
union efforts.  For example:

    a.  Panel member David R. Osborne is the President and General Counsel of the
        Fairness Center, a nonprofit that he helped launch in 2014 that "provides free
        legal services to those hurt by public-sector union officials."  The Fairness Center
        - About, https://www.fairnesscenter.org/about/ (last visited March 25, 2020).
        Since assuming his role on the Panel, he has continued to represent plaintiffs
        suing public employee unions for alleged "violations of their First and Fourteenth
        Amendment rights as a result of the compulsory collection of union fees."
        *Hartnett v. Pennsylvania State Educ. Ass'n*, 390 F. Supp. 3d 592, 594 (M.D. Pa.
        2019); *see also Williams v. Pennsylvania State Educ. Ass'n*, No. 1:16-CV-02529-
        JEJ, 2017 WL 1476192 (M.D. Pa. Apr. 25, 2017).

    b.  Panel member Jonathan Riches is the Director of National Litigation & General
        Counsel for the Goldwater Institute, where "[h]e litigates in federal and state trial
        and appellate courts in the areas of economic liberty, taxpayer rights, public union
        and pension reform, government transparency, free speech, and school choice,

among others."  Goldwater Institute, Jon Riches Biography,

https://goldwaterinstitute.org/team/jon-riches/ (last visited March 25, 2020).  Mr.

Riches has also continued to serve as counsel in lawsuits challenging public

employee unions while serving as a member of the Panel.  *See State v. City of*

*Austin*, No. 03-17-00131-CV, 2017 WL 4103617, at *1 (Tex. App. Sept. 12,

2017) (challenging paid "release time" for firefighters).

c.  Panel member F. Vincent Vernuccio serves as a labor policy consultant for the

State Policy Network (SPN), a senior fellow at the Mackinac Center for Public

Policy, and a senior fellow at the Illinois Policy Institute.  He is a prolific author

of anti-union editorials and has continued to publish this material even after

assuming his position as a neutral with the Panel.[1]

d.  Panel member Maxford Nelsen is the Director of Labor Policy for the Freedom

Foundation, "where he leads the organization's research, advises its strategic

litigation program, and advances its government affairs efforts."  FLRA News,

*President Trump Appoints Two New Members to the Federal Service Impasses*

*Panel* (October 8, 2019),

https://www.flra.gov/system/files/webfm/FLRA%20Agency-

wide/Public%20Affairs/Press%20Releases/Press%20Release%20-

---

[1] *See, e.g.*, F. Vincent Vernuccio, *Union Brags About Winning Wage Increase Already Paid by Non-union Employers*, TOWNHALL (May 18, 2019) https://townhall.com/columnists/fvincentvernuccio/2019/05/18/union-brags-about-winning-wage-increase-already-paid-by-nonunion-employers-n2546504; F. Vincent Vernuccio, *The GM strike isn't about what's best for workers,* CNN BUSINESS (September 20, 2019) https://www.cnn.com/2019/09/20/perspectives/uaw-gm-strikes-workers/index.html; F. Vincent Vernuccio, *New name, same bad ideas: Democrats introduce union wish list*, THE HILL (May 4, 2019), https://thehill.com/opinion/finance/442024-new-name-same-bad-ideas-democrats-introduce-union-wish-list.

%20FSIP%20Appointments.pdf.  Mr. Nelsen has filed almost 80 complaints

before the Public Disclosure Commission of Washington state, nearly all of which

are against labor unions or companies who have deducted union dues from their

employees' paychecks.[2]  In addition, he has written numerous incendiary

editorials in which he has clearly aligned himself against unions[3] and accused

public-employee unions of engaging in "downright un-American" practices[4] and

other unions of "bullying,"[5] "harassment,"[6] and conspiracy.[7]

    e.  Panel Member Patrick Wright currently serves as Vice President of Legal Affairs

for Mackinac Center for Public Policy, a research organization that "advances the

principles of free markets and limited government."  Mackinac Center for Public

Policy Home Page (last visited March 25, 2020), https://www.mackinac.org/.  His

biography on the Mackinac Center web site touts the fact that the Supreme Court

cited his brief on behalf of the Center in support of the petitioner challenging

---

[2] *See* https://www.pdc.wa.gov/search?search_api_views_fulltext=%22maxford%20nelsen%22
&f%5B0%5D=type%3Aenforcement_case.

[3] Maxford Nelsen, *Neil Gorsuch can give workers a win over unions at the Supreme Court -- if we fight for it*, WASHINGTON EXAMINER (September 28, 2017)
https://www.washingtonexaminer.com/neil-gorsuch-can-give-workers-a-win-over-unions-at-the-supreme-court-if-we-fight-for-it.

[4] Maxford Nelsen, *Public-Employee Unions Do Not Promote Labor Peace,* NATIONAL REVIEW (Feb. 2, 2018) https://www.nationalreview.com/2018/02/supreme-court-afscme-case-statistics-support-right-work/.

[5] Maxford Nelsen, *Unions are siphoning Medicaid funds by bullying caregivers*, WASHINGTON EXAMINER (May 10, 2017) https://www.washingtonexaminer.com/unions-are-siphoning-medicaid-funds-by-bullying-caregivers.

[6] Maxford Nelsen, *Records show continued SEIU harassment of caregivers* (July 25, 2018)
https://www.freedomfoundation.com/labor/records-show-continued-seiu-harassment-of-caregivers/.

[7] Maxford Nelsen, *West Coast states and unions conspiring to keep skimming Medicaid funds* (Feb. 15, 2019) https://www.freedomfoundation.com/labor/west-coast-states-and-unions-conspiring-to-keep-skimming-medicaid-funds/.

public union "agency fees" in *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31,* 138 S. Ct. 2448 (2018). https://www.mackinac.org/bio.aspx?ID=433.  The FLRA is currently citing this decision to alter voluntary union dues allotments in the federal sector.  *Office of Pers. Mgmt. (Petitioner),* 71 F.L.R.A. 571 (Feb. 14, 2020).  On information and belief, he has no certifications, training, or background in arbitration or mediation.

31.    The other Panel members have no expertise in arbitration or mediation, and therefore are plainly unfit to perform the "duties and functions" of office as required by the Act. For example:

a.  Karen Czarnecki currently serves as Vice President of Outreach of George Mason University's Mercatus Center, a "market-oriented" think tank.  *See* https://www.mercatus.org/about.  She is a communications professional with self-described experience in "external affairs and coalition-building work developing high-profile programs and initiatives that require strategic plans, management oversight, communications plans, and targeted fundraising." See https://www.linkedin.com/in/karenczarnecki/ (last visited March 25, 2020).  On information and belief, she has no certifications, training, or background in arbitration or mediation.  https://www.mercatus.org/people/karen-czarnecki (last visited March 25, 2020).

b.  Panel member Robert J. Gilson has served as the "chief negotiator" for numerous collective bargaining agreements on behalf of federal agencies.  *See* https://www.flra.gov/system/files/webfm/FLRA%20Agency-wide/Public%20Affairs/Press%20Releases/Press%20Release%20-

%20FSIP%20Appointments.pdf.  On information and belief, he has no

certification or experience as an arbitrator or mediator.

c.   Both Andrea Fischer Newman and Mark Anthony Carter were Panel members

under the administration of President George W. Bush.  On information and

belief, neither Panelist holds any credential in arbitration or mediation.

d.   Michael Lucci was appointed to the Panel on March 12, 2020.  On information

and belief, he is Vice President of State Projects at the Tax Foundation.  He

previously served as Deputy Chief of Staff for Policy to Illinois Governor Bruce

Rauner and as Vice President of Policy at Illinois Policy Institute.  On information

and belief, Mr. Lucci does not hold any credential in arbitration or mediation.

32.    Former FSIP Executive Director Joseph Schimansky has observed that the current

Panel has favored the agency more than 90% of the time.  David Elfin, *FSIP Veteran Schimansky*

*Says Voluntary Settlements are the Way to Go*, CYBERFEDS (July 26, 2019).

33.    This Panel has also acted in clear disregard of its job as a neutral arbiter and

imposed more extreme positions than those taken by either party.  For example, in a decision

concerning the percentage of official time allocated to a local union president, the union

requested a schedule of three days per week and the agency countered with two days per week.

The Panel determined that "neither party's proposal is warranted" and, engaging in its own

analysis of the union's workload, imposed its own schedule of one day per week.  *See In the*

*Matter of United States Dep't of Agric. USDA Rural Dev. Washington, D.C. & Am. Fed'n of*

*State, Cty., & Mun. Employees, Local 3870*, No. 17 FSIP 060 at 2-4 (Jan. 2, 2018).  In a

subsequent decision, the Panel announced that it would reach its own determination of the proper

amount of official time based upon its determination of what is "reasonable, necessary, and in

the public interest," emphasizing that even the agency's lesser amount must be separately justified to the Panel's satisfaction.  *See, e.g., In the Matter of U.S. Dep't of Veterans Affairs & Nat'l Fed'n of Fed. Employees*, No. 19 FSIP 024 at *3-4 (Sept. 4, 2019) (striking agency proposal for official time).

### Plaintiff's Pending Labor Dispute Before the Panel

34.     AFGE and the VA have a longstanding and continuing collective bargaining relationship governed by the Act.  They are parties to a collective bargaining agreement where the initial term expired on March 15, 2014, but are currently in an indefinite extension until a new agreement is negotiated.

35.     Beginning on June 26, 2018, plaintiff National VA Council began negotiating the ground rules for a new collective bargaining agreement with the VA.  AFGE and the VA entered into a "ground rules" agreement on April 2, 2019, which governed the negotiation process.

36.     After the VA made multiple declarations that the parties had reached an impasse, on December 19, 2019, the VA requested that the Impasses Panel intervene.

37.     On March 18, 2020, over the NVAC's objection, the Panel asserted jurisdiction over the purported impasse.  The Panel scheduled a telephone conference for April 1, 2020, to discuss the timing of briefs and supporting materials.

38.     Once the Panel sets a schedule, the parties will file written submissions and supporting evidence, and may also file rebuttal statements if directed by the Panel.  *See* https://www.flra.gov/fsip_drpg_4d.  The parties generally do not have the opportunity to "engage in a dialogue" with the Panel or present oral argument, although the Panel may conduct a telephone conference to clarify the record.  *Id.*  As noted above, once the Panel issues a decision, it is binding on the parties with no opportunity for judicial review.

## PLAINTIFF'S CLAIMS FOR RELIEF

## COUNT ONE

### (Violation of Appointments Clause)

39.     The Appointments Clause of the United States Constitution provides that the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint" all principal officers of the United States.  U.S. Const. art. II, § 2, cl. 2.

40.     "[A]ny appointee exercising significant authority pursuant to the laws of the United States" is an officer who must "be appointed in the manner prescribed by" the Appointments Clause.  *Buckley,* 424 U.S. at 126 (citing U.S. Const. art. II, § 2, cl. 2).

41.     The Panel exercises "significant discretion" when carrying out "important functions."  *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053 (2018).  The Panel may investigate, make fact-findings and recommendations, hold hearings, administer oaths, take testimony and depositions, issue subpoenas, and assist in resolving impasses "through whatever methods and procedures . . . it may consider appropriate."  § 7119(c)(5)(A)-(B).  Like the officers in *Lucia*, Panel members "have all the authority needed to ensure fair and orderly adversarial hearings— indeed, nearly all the tools of federal trial judges."  *Lucia*, 138 S. Ct. at 2053 (citing *Freytag v. Comm'r*, 501 U.S. 868, 884 (1991)).  Because they exercise this "significant authority pursuant to the laws of the United States," Panel members are officers, not mere employees.  *Edmond v. United States*, 520 U.S. 651, 662 (1997); *see also Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 37 (D.C. Cir. 2016).  In addition, the Panel is not "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  *Edmond*, 520 U.S. at 663; *see Ass'n of Am. Railroads*, 821 F.3d at 38.

42.     Finally, the Panel has authority to issue decisions that "are final and nonreviewable." *Council of Prison Locals*, 735 F.2d at 1499.  Panel rulings cannot be reviewed, reversed, or altered by any entity within the Executive Branch, nor can they be reviewed by the courts.

43.     The Panel's authority to issue final decisions without the direction or supervision of a higher-ranking officer or entity makes clear that Panel members are principal officers.

44.     The Constitution prescribes that principal officers be appointed by the President with the advice and consent of the Senate.  This powerful safeguard "serves both to curb Executive abuses of the appointment power . . . and 'to promote a judicious choice of [persons] for filling the offices of the union.'" *Edmond*, 520 U.S. at 659.

45.     While appointed by the President, none of the Panel members were confirmed by the Senate.  Because none of the Panel's members were appointed in conformance with the Constitution, it lacks the authority to assert jurisdiction or issue any decisions.

## COUNT TWO

### (Violation of the Federal Service Labor-Management Relations Statute)

46.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

47.     The applicable statute requires the appointment of Impasses Panel members "solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with government operations and knowledgeable in labor-management relations."  5 U.S.C. § 7119(c)(2).

48.     The statute was intended to require the appointment of neutral decision-makers skilled in arbitration of labor-management matters.

16

49.     Few, if any, of the current Panel members meet these criteria.  On information and belief, not a single member of the Panel has a background, training, certification, or credential in arbitration or mediation.  Moreover, at least four members have blatant conflicts of interest that disqualify them from meeting the statutory fitness requirements for service on the Panel.

50.     Because its members do not meet the statutory requirements of the office, the Panel is improperly constituted and is therefore not empowered to issue binding rulings that affect federal unions and their employing agencies.

## COUNT THREE

### (Violation of Due Process Clause of the Fifth Amendment)

51.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

52.     Due process fundamentally requires "the right to trial by an unbiased tribunal." *Wildberger v. Am. Fed'n of Gov't Employees, AFL-CIO*, 86 F.3d 1188, 1193 (D.C. Cir. 1996); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982).

53.     The Impasses Panel, as currently constituted, does not provide Plaintiff with a neutral tribunal free of bias.  Its members not only advocate for and pursue anti-union policies in their current employment not with the Panel, but also continue to derive income by litigating against public sector unions.  In doing so, they "occup[y] two practically and seriously inconsistent positions, one partisan and the other judicial, [which] necessarily involves a lack of due process of law."  *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 60 (1972) (holding that mayor could not judge traffic offenses where major portion of his village's income was derived from fines, fees, and costs imposed by him in his court).

17

54.     Because the Impasses Panel is composed of members who lack requisite neutral bona fides and/or harbor clear conflicts of interest, the Panel cannot, consistent with the Due Process Clause of the Fifth Amendment, issue binding rulings that affect federal unions and their employing agencies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Declare that the Panel is improperly constituted because its members are not appointed with the advice and consent of the Senate as required by the Appointments Clause of the U.S. Constitution;

2.     Declare that the Panel is improperly constituted because its members do not meet the requirements for appointment under 5 U.S.C. § 7119(c)(2);

3.     Declare that the Panel is improperly constituted because its members do not provide an impartial tribunal as required by the Due Process Clause of the U.S. Constitution;

4.     Declare that the rulings of the improperly constituted Panel are null and void;

5.     Enjoin the Panel from issuing any decisions regarding Plaintiff until its members are properly appointed;

6.     Award Plaintiff reasonable attorneys' fees and litigation costs in this action; and

7.     Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Matthew M. Collette
Matthew M. Collette
  DC Bar No. 427617
Kathryn Robinette
  DC Bar. No. 001659218
MASSEY & GAIL LLP
1000 Maine Ave. SW
Suite 450
Washington, DC 20024
Phone: (202) 652-4511
Fax: (312) 379-0467
mcollette@masseygail.com
krobinette@masseygail.com

**_Attorneys for Plaintiff_**