**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL VETERANS AFFAIRS COUNCIL,<br><br>    *Plaintiff,*<br><br>    v.<br><br>FEDERAL SERVICE IMPASSES PANEL; MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel; and FEDERAL LABOR RELATIONS AUTHORITY,<br><br>    *Defendants,*<br><br>and<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>    *Intervenor-Defendant.* | Case No. 20-cv-837-CJN |

**PLAINTIFF NATIONAL VETERANS AFFAIRS COUNCIL'S
SUPPLEMENTAL BRIEF**

Matthew M. Collette
Kathryn A. Robinette
MASSEY & GAIL LLP
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
(202) 795-3326
mcollette@masseygail.com
krobinette@masseygail.com

*Attorneys for Plaintiff National Veterans
Affairs Council*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

NVAC HAS ARTICLE III STANDING TO BRING THIS ACTION ......................................... 2

    I.      NVAC Has Demonstrated Injury. .......................................................... 2

    II.     NVAC's Injury Is Fairly Traceable To The Challenged Action And Would
             Be Redressed By A Favorable Decision. ................................................ 5

CONCLUSION ........................................................................................................... 8

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Andrade v. Lauer,*
    729 F.2d 1475 (D.C. Cir. 1984) ................................................................. 4, 6, 7

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................................................ 3

*Cobell v. Norton,*
    334 F.3d 1128 (D.C. Cir. 2003) ....................................................................... 5

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
    878 F.3d 371 (D.C. Cir. 2017) .......................................................................... 2

*Hammond v. Baldwin,*
    866 F.2d 172 (6th Cir. 1989) ............................................................................ 5

*In re Al-Nashiri,*
    921 F.3d 224 (D.C. Cir. 2019) .......................................................................... 5

*Landry v. FDIC,*
    204 F.3d 1125 (D.C. Cir. 2000) ....................................................................... 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................. 2, 3, 6

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) .......................................................................................... 6

*Nat'l Aeronautics & Space Admin., Kennedy  Space Ctr. and Am. Fed'n of Gov't*
    *Employees, Local 513,*
    Case No. 20 FSIP 025 (May 22, 2020) ............................................................ 1

*Nucor Steel-Arkansas v. Pruitt,*
    246 F. Supp. 3d 288 (D.D.C. 2017) ................................................................. 6

*Olympic Federal Sav. & Loan Ass'n v. Dir., Office of Thrift Supervision,*
    732 F. Supp. 1183 (D.D.C.), *appeal dismissed and remanded,*
    903 F.2d 837 (D.C. Cir. 1990) ...................................................................... 4, 7

*Pennsylvania, Dep't of Pub. Welfare v. United States,*
    124 F. Supp. 2d 917 (W.D. Pa. 2000) .............................................................. 7

*State Nat. Bank of Big Spring v. Lew,*
    795 F.3d 48 (D.C. Cir. 2015) ........................................................................ 3, 4

*Sugar Cane Growers Co-op. of Fla. v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) ........................................................................... 6

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014).................................................................................................. 3

*Thomas v. Union Carbide Agr. Prod. Co.,*
  473 U.S. 568 (1985).................................................................................................. 3

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n,*
  689 F.2d 693 (7th Cir. 1982).................................................................................... 5

*Venetian Casino Resort, LLC v. EEOC,*
  409 F.3d 359 (D.C. Cir. 2005).................................................................................. 3

*Ward v. Village of Monroeville, Ohio,*
  409 U.S. 57 (1972).................................................................................................... 5

**Statutes**

5 U.S.C. § 7116........................................................................................................... 1

## **INTRODUCTION**

Pursuant to this Court's order of June 25, 2020, plaintiff National Veterans Affairs Council ("NVAC") submits this brief addressing its Article III standing to bring this action.

In this case, the Veterans Administration unilaterally requested that the Federal Service Impasses Panel (the "Panel") assert jurisdiction over a purported impasse in negotiations over its collective bargaining agreement with NVAC.  NVAC objected, but the Panel nonetheless asserted jurisdiction and is poised to impose contract terms on the parties after briefing is complete on July 5, 2020.  This procedure is not voluntary.  Despite its objections to the Panel's exercise of jurisdiction—and despite its contention that the composition of the Panel violates the Appointments Clause, the Federal Service Labor-Management Relations Statute (the "Statute"), and the Due Process Clause—federal law requires NVAC to participate.  *See* 5 U.S.C. § 7116(b)(6).  Indeed, the failure to participate could result in a Panel decision that is made without even considering the union's views.  *See, e.g., Nat'l Aeronautics & Space Admin., Kennedy Space Ctr. and Am. Fed'n of Gov't Employees, Local 513*, Case No. 20 FSIP 025 (May 22, 2020).

As we discuss below, NVAC has Article III standing here.  First, NVAC has demonstrated sufficient injury in fact to support standing.  NVAC's injury stems from being required to submit to a tribunal whose members have not been appointed consistent with the Appointments Clause, and whose members lack the impartiality required under both the Statute and the Due Process Clause.  That injury is concrete, particularized, and immediate even though the Panel has not yet issued a decision in this case.  That is because the procedural injury is independent from any decision that the Panel may issue at a later date.

NVAC has an ongoing dispute with the agency over which the Panel has asserted jurisdiction.  Briefing will be complete in mere days, and the Panel will issue a binding order on

the parties thereafter.  NVAC's procedural injury has been specifically recognized by the courts, and that injury is specific and imminent, not abstract.

Second, NVAC's injury—having to submit to an improperly constituted Panel— is fairly traceable to the challenged conduct here.   The challenged conduct—the unconstitutional membership of the Panel—is the direct cause of NVAC's injury.  Third, the injury is redressable. A favorable decision would declare the Panel improperly constituted and allow NVAC and the agency to present their dispute to a Panel whose membership complies with the constitutional and statutory requirements.  That is all that Article III requires.

## ARGUMENT

## NVAC HAS ARTICLE III STANDING TO BRING THIS ACTION

"To establish standing, the plaintiff must show (1) it has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision,' i.e., a decision granting the plaintiff the relief it seeks."  *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376-77 (D.C. Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Under these standards, NVAC has Article III standing.

## I.      NVAC Has Demonstrated Injury.

NVAC has demonstrated a "concrete and particularized" injury to support standing here. As we discussed in our motion for preliminary injunction ("P.I. Mot."), NVAC suffers injury in having to submit its negotiation impasse to an improperly constituted Panel.  P.I. Mot. at 34-35. NVAC need not wait until the Panel issues a ruling because the procedural injury is independent of any decision the Panel may issue.

Recognizing this principle, numerous courts have found standing for plaintiffs challenging the appointment of a decision maker without requiring the plaintiff to wait for an adverse ruling.

2

In *Buckley v. Valeo*, 424 U.S. 1, 117 (1976), for instance, the Supreme Court held that candidates, political parties, and organizations had standing to maintain an Appointments Clause challenge to the Federal Election Commission, even though the case involved *future* rulings of the Commission. The Court held that "[p]arty litigants with sufficient concrete interests at stake may have standing to raise constitutional questions of separation of powers with respect to an agency designated to adjudicate their rights." *Id.*   The Court recognized that  "in this case appellants' claim is of impending future rulings and determinations by the Commission," but stated:  "But this is a question of ripeness, rather than lack of case or controversy under Art. III." *Id.*[1]

Similarly in *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015), the D.C. Circuit concluded that a bank had standing to challenge various provisions of the Dodd-Frank Act, including the constitutionality of the Consumer Financial Protection Bureau and the President's appointment of the Bureau head, by virtue of its status as a regulated entity.  As here, the Bank was not challenging a specific rule, enforcement action, or order, but rather "the legality of the regulating agency itself."  *Id.* at 54.  Because there was "no doubt" that the Bank was "regulated by the Bureau," and the Bureau had acted pursuant to its purported authority (e.g., to promulgate regulations), this was sufficient under *Lujan* to confer standing.  *Id.* at 53.  This was

---

[1] The Government has not argued that this case is not ripe.  For good reason.  The Appointments Clause issue is "purely legal, and will not be clarified by further factual development."  *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581 (1985); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014); *see also Buckley*, 424 U.S. at 117-18 (finding pre-enforcement Appointments Clause challenge ripe).  The functions of the Panel, and the fact that its members are not appointed with Senate confirmation, are not in dispute.  All that is required is a ruling as to whether those functions render the Panel members principal officers.  The "hardship prong" of the ripeness doctrine is "largely irrelevant" where "neither the agency nor the court have a significant interest in postponing review."  *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 365–66 (D.C. Cir. 2005) (internal quotation marks and citation omitted).  We are aware of no such interest here.

so even though the Bank was not subject to a *specific* CFPB enforcement action or adverse ruling: "it would make little sense to force a regulated entity to violate a law (and thereby trigger an enforcement action against it) simply so that the regulated entity can challenge the constitutionality of the regulating agency." *Id.* at 54. Here, too, it would make little sense to await an adverse ruling from the Panel when NVAC's challenge concerns not any particular ruling, but rather the authority of the Panel to exercise its jurisdiction in this case over NVAC's objection.

Finally, in *Olympic Federal Sav. & Loan Ass'n v. Dir., Office of Thrift Supervision*, 732 F. Supp. 1183, 1188 (D.D.C.), *appeal dismissed and remanded*, 903 F.2d 837 (D.C. Cir. 1990), this Court held that the plaintiff could maintain a challenge to the constitutional authority of the Director of the Office of Thrift Supervision to appoint a receiver, even though the Director had not yet made a decision to do so. The Court recognized "plaintiff's claim . . . under the Constitution and laws of the United States, [that] it is subject to regulation only by individuals with legal authority to act." *Id.* at 1188.

The "essence" of the claim here, as it was in *Olympic Federal*, is that this Panel has "no right to exercise" the powers it purports to hold. *Id.* "And this is the injury which a finding for plaintiff on its constitutional claim would redress: the injury which any citizen suffers when its government acts unconstitutionally against it." *Id. See also Andrade v. Lauer*, 729 F.2d 1475, 1496 (D.C. Cir. 1984) (noting that "the gravamen" of a procedural due process complaint is the "right that the government act in accord with due process principles when it takes action against them, *even if such conformance may not change the substantive outcome*") (emphasis added).

In addition, NVAC suffers injury from being required to submit to a Panel that is not impartial. As we pointed out in our P.I. Mot. at 35, "[s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief,

where irreparable injury will follow in the due course of events, even though the party charged is to be deprived of nothing until the completion of the proceedings." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982). "The injury is the submission itself; the biased (or potentially biased) decision may also result in injury, but it is a separate, distinct one." *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989). Thus, even if a proper forum is supplied at a later time, the injury is not repaired because the party "is entitled to a neutral and detached judge in the first instance." *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 61-62 (1972).

That is why the D.C. Circuit has entertained claims attempting to disqualify judicial officers before the officer issues a final decision. The Court has explained: "When the relief sought is recusal of a disqualified judicial officer, however, the injury suffered by a party required to complete judicial proceedings overseen by that officer is by its nature irreparable." *Cobell v. Norton*, 334 F.3d 1128, 1139 (D.C. Cir. 2003); *see also In re Al-Nashiri*, 921 F.3d 224, 238 (D.C. Cir. 2019) (quoting *Cobell*). As those cases recognize, the injury is not an adverse decision, but participation in a tainted process.

To be sure, a decision by the Panel (likely in a matter of weeks) that imposes contract terms to which NVAC did not agree will cause *additional* injury. But NVAC already is suffering injury by being subject to the Panel's jurisdiction and required to submit briefing to and participate in a process before a Panel that lacks authority to act.

## II.   NVAC's Injury Is Fairly Traceable To The Challenged Action And Would Be Redressed By A Favorable Decision.

Having articulated sufficient injury, NVAC easily meets the remaining requirements of Article III standing. NVAC's injury is fairly traceable to the challenged conduct. The challenged conduct—the unconstitutional membership of the Panel—is the direct cause of NVAC's injury.

NVAC has been forced to submit its dispute to the improperly constituted Panel for a binding, non-reviewable decision.  That is all that is required.

NVAC's injury can also be redressed by a favorable decision here, which would declare the Panel improperly constituted and pave the way for NVAC and the agency to present their dispute to a Panel whose membership complies with the constitutional and statutory requirements.

NVAC's rights are procedural, and as such are subject to relaxed standards of causation and redressability.  Procedural rights "are special," and persons to whom such a right has been afforded "can assert that right without meeting all the normal standards for redressability and immediacy."  *Lujan*, 504 U.S. at 572 n. 7.  As this Court has recognized, "[t]his principle means that the plaintiff need not demonstrate that correcting the procedural violation itself would necessarily remedy the injurious government action, so long as 'there is some possibility' that it would do so."  *Nucor Steel-Arkansas v. Pruitt*, 246 F. Supp. 3d 288, 301 (D.D.C. 2017) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)).

NVAC need not prove that a properly constituted Panel would issue a substantively different order.  "A plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered."  *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002).  "All that is necessary is to show that the procedural step was connected to the substantive result."  *Id.* at 94-95 (rejecting the district court's argument that a party lacked standing because it was "not at all clear" the substantive result would necessarily have differed had the procedural right not been violated).

The D.C. Circuit's decision in *Andrade* controls here.  729 F.2d at 1496.  There, the Court rejected the argument that plaintiffs in "procedural due process cases do not have standing unless

they can show that, if the government had operated in accord with constitutionally valid procedures" it would have changed "the substantive outcome."  *Id*.; *see also Olympic Federal*, 732 F. Supp. at 1189 (*Andrade* "explicitly rejects the claim that one cannot maintain an Appointments Clause challenge unless one can show that, had the Constitution's requirements been followed, the outcome would have been different.").

In *Olympic Federal*, this Court applied the reasoning of *Andrade* to "absolutely reject[] the proposition that the procedural protections conferred by various statutes and by the Constitution are nothing more than hollow gestures at the appearance of democracy."  732 F. Supp. at 1189.  In holding that plaintiffs had established Article III standing, the Court observed that "[t]he Appointments Clause subjects the selection process to public scrutiny, thereby affecting who takes office, how they perceive their function, and how they exercise their powers."  *Id.; see also Pennsylvania, Dep't of Pub. Welfare v. United States*, 124 F. Supp. 2d 917, 922 (W.D. Pa. 2000) (concluding the Commonwealth had standing to assert an Appointments Clause challenge and noting that "[a]lthough the analyses in *Andrade*, *Olympic*, and *Landry [v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000)] differ in some respects, a common thread runs through each of those decisions: an Appointments Clause challenge runs deeper than any immediate adverse governmental action a plaintiff may seek to avoid; it also entails the plaintiff's subjection to an exercise of power by an unconstitutionally appointed officer.").

Here, a decision that the Panel's membership violates the Appointments Clause, the Statute, or the Due Process Clause will mean that NVAC no longer has to submit to the improperly constituted Panel.  Therefore, the injury here is redressable.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should find that NVAC has Article III standing to maintain its claims in this action.


Dated: June 30, 2020                                    Respectfully submitted,

                                                        /s/ *Matthew M. Collette*

                                                        Matthew M. Collette /DC Bar No. 427617
                                                        Kathryn Robinette /DC Bar. No. 1659218
                                                        MASSEY & GAIL LLP
                                                        1000 Maine Ave. SW, Suite 450
                                                        Washington, DC 20024
                                                        Phone: (202) 652-4511
                                                        Fax: (312) 379-0467
                                                        mcollette@masseygail.com
                                                        krobinette@masseygail.com

                                                        *Attorneys for Plaintiff National Veterans Affairs Council*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day in June, 2020, a copy of the foregoing was filed electronically via this Court's ECF system, which effects service upon counsel of record.

/s/ *Matthew M. Collette*
Matthew M. Collette
Counsel for Plaintiff